**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Kendra Hogue, et al.,

Plaintiffs,

v.

Michael J Bidwill, et al.,

Defendants.

No. CV-26-03695-PHX-JCH

**ORDER**

Pending before the Court is Defendants' Motion to Compel Arbitration (Doc. 5). For the reasons below, the Court will enforce the arbitration agreements, compel arbitration of Plaintiffs' claims under their terms, and stay this action.

## I. BACKGROUND

Plaintiffs Kendra Hogue ("Hogue") and Don Shumpert ("Shumpert") are former employees of Defendant Arizona Cardinals Football Club, LLC (the "Cardinals"). Doc. 1-3 at 4–7. Hogue worked as Executive Assistant to Defendant Jeremy Walls ("Walls"), the Cardinals' Chief Operating Officer, from September 9, 2024, until November 8, 2024. *Id.* at 4–5. Shumpert worked for the Cardinals as a coach from 2019 until his termination in 2022. *Id.* at 5, 7.

Hogue alleges Defendants subjected her to racial discrimination, harassment, retaliation, and disparate treatment, creating working conditions that caused her to resign. *Id.* at 5. She alleges her resignation amounted to a constructive discharge. *Id.* Shumpert alleges, during the 2022 season, he performed the responsibilities of both an offensive

assistant and running backs coach without additional compensation or assistance. *Id.* at 6. After requesting additional compensation or assistance, Shumpert was terminated on October 3, 2022. *Id.* at 6–7. Shumpert further alleges similarly situated white coaches received more favorable treatment and, following his termination, the Cardinals made false statements regarding the circumstances of his departure. *Id.* at 8–9.

Plaintiffs signed employment documents containing arbitration provisions. Doc. 5 at 15, 29. Both provisions cover employment-related disputes, including claims that all or part of the agreement is "void or voidable," and direct those disputes to the National Football League ("NFL") Commissioner (the "Commissioner") or his designee. *Id.* at 13–15, 25–27. Hogue's arbitration agreement provides:

> …[A]ny dispute, controversy or claim…that exists or that ever arises between [Hogue and the Cardinals], including without limitation any dispute arising from or relating to the terms of this document (including without limitation any claim that all or any part of this document is void or voidable), [Hogue's] employment or termination of employment with [the Cardinals], and any claim or dispute arising under any…contract, tort, federal, state, or local statute (including, but not limited to claims arising under…42 U.S.C. §1981)…or any other legal theory shall be referred to the Commissioner of the NFL or his designee for binding arbitration, except as otherwise provided herein…. The decision and award of the arbitrator shall be final, binding and unappealable….
>
> …
>
> The Parties further and mutually agree that if the Commissioner determines, in his sole discretion, that a dispute is football-oriented (defined as a dispute relating to or arising out of the Constitution and Bylaws of the National Football League, or any NFL or [Cardinals'] policies, rules or regulations), the Commissioner or his designee shall serve as arbitrator. … [T]he arbitration shall be governed by the National Football League's Dispute Resolution Procedural Guidelines…. If the Commissioner, in his sole discretion, determines that a dispute is not football-oriented (defined as a dispute not relating to or arising out of the Constitution and Bylaws of the National Football League, or any NFL or [Cardinals'] policies, rules or regulations, including, but not limited to disputes relating to or arising out of discrimination, wage and hour, or family and medical leave issues), the Parties agree that the Commissioner may direct that the dispute be referred for final, binding, and conclusive arbitration administered by JAMS, utilizing its Employment Arbitration Rules and Procedures then in effect….
>
> …

> The Parties agree that the purpose of this provision is to ensure that any and all disputes that may arise between them shall be resolved through binding, conclusive arbitration as opposed to court or administrative litigation.
> …
> If any portion…is found to be unenforceable…the Parties agree that the unenforceable portion…shall be severed and the remainder of this document, including the agreement to submit to binding arbitration, shall remain valid and in effect.

*Id.* at 13–15.

Shumpert's arbitration agreement similarly provides:

> …[A]ny dispute, controversy or claim…that exists or that ever arises between [Shumpert] and the [Cardinals]…including, without limitation, any dispute arising from or relating to the terms of this Agreement (including without limitation any claim that all or any part of this Agreement is void or voidable), [Shumpert's] employment or termination of employment with the [Cardinals], and any claim or dispute arising under any…contract, tort, federal, state, or local statute (including, but not limited to claims arising under…42 U.S.C. §1981)…or any other legal theory shall be referred to the Commissioner of the NFL or his designee for binding arbitration, except as otherwise provided herein.
> …
> [I]f the Commissioner determines, in his sole discretion, that a dispute is football-oriented (defined as a dispute relating to or arising out of the Constitution and Bylaws of the National Football League, or any NFL or [Cardinals'] policies, rules or regulations), the Commissioner or his designee shall serve as arbitrator. …[T]he arbitration shall be governed by the National Football League's Dispute Resolution Procedural Guidelines…. If the Commissioner, in his sole discretion, determines that a dispute is not football-oriented (defined as a dispute not relating to or arising out of the Constitution and Bylaws of the National Football League, or any NFL or [Cardinals'] policies, rules or regulations, including, but not limited to disputes relating to or arising out of discrimination, wage and hour, or family and medical leave issues), the parties agree that the Commissioner may direct that the dispute be referred for final, binding, and conclusive arbitration administered by JAMS, utilizing its Employment Arbitration Rules and Procedures then in effect….
> …
> The decision and award of the Commissioner or his designee shall be final, binding and unappealable….
> …
> [Shumpert] and the [Cardinals] agree that the purpose of this provision is to

> ensure that any and all disputes that may arise between the [Cardinals] (or its affiliates) and [Shumpert] (other than Excluded Claims) shall be resolved through binding, conclusive arbitration as opposed to court or administrative litigation. … If any portion or aspect of this provision is found unenforceable…the parties agree that the unenforceable portion…shall be severed and the remainder of the provision, including the agreement to submit to binding arbitration, shall remain valid and in effect.

*Id.* at 25–27.

Plaintiffs filed this action in Maricopa County Superior Court on April 23, 2026, against the Cardinals, Michael Bidwill ("Bidwill"), and Walls. Doc. 1-3 at 2. Hogue asserts claims for racial discrimination and retaliation under 42 U.S.C. § 1981 and constructive discharge. *Id.* at 9–11. Shumpert asserts claims for racial discrimination under § 1981, breach of the implied covenant of good faith and fair dealing, defamation, and intentional infliction of emotional distress. *Id.* at 12–15.

On May 26, 2026, Defendants removed the action to this Court. Doc. 1. On June 1, 2026, Defendants moved to compel arbitration. Doc. 5. Plaintiffs filed a response in opposition on June 15, 2026, and Defendants filed a reply on June 22, 2026. Docs. 6, 7.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements. Under Section 2, a written arbitration agreement "shall be valid, irrevocable, and enforceable," except upon generally applicable legal or equitable grounds for revocation of a contract. 9 U.S.C. § 2. Section 3 requires a court, upon application of a party, to stay an action when an issue is referable to arbitration under a written agreement. *Id.* at § 3; *Smith v. Spizzirri*, 601 U.S. 472, 476–77 (2024). Section 4 requires a district court to compel arbitration when an enforceable arbitration agreement covers the dispute and a party has failed, neglected, or refused to arbitrate under that agreement. 9 U.S.C. § 4.

A court considering a motion to compel arbitration determines two gateway issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir.

2023) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)); *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("[A] federal court may consider only issues relating to the making and performance of the agreement to arbitrate."). The parties may assign these gateway questions to an arbitrator, but their intent to do so must be clear and unmistakable. *Momot v. Mastro*, 652 F.3d 982, 987–88 (9th Cir. 2011). The party seeking to compel arbitration bears the burden of proof. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). "The party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021).

## III. PARTIES' ARGUMENTS

Defendants move to compel arbitration, arguing Plaintiffs entered into valid arbitration agreements with the Cardinals requiring arbitration of "any dispute, controversy or claim" arising from or relating to their employment. Doc. 5 at 1, 5. Defendants contend the agreements encompass Plaintiffs' claims because they arise from their employments with the Cardinals, and the parties delegated questions concerning the agreements' validity and enforceability to the arbitrator. *Id.* at 4–5. Based on the FAA and the asserted federal policy favoring arbitration, Defendants ask the Court to compel arbitration and stay this action pending arbitration. *Id.* at 4, 7.

Plaintiffs oppose the motion on two grounds. First, principally relying on *Flores v. New York Football Giants, Inc.*, 150 F.4th 172 (2d Cir. 2025) and *National Football League v. Gruden*, 573 P.3d 1240 (Nev. 2025), they argue the Commissioner-controlled process does not qualify as arbitration under the FAA because it lacks an independent decisionmaker and gives the Commissioner unilateral control over the forum and procedure. Doc. 6 at 4–6. They further argue that the Commissioner's relationship to the NFL club owners, including Defendant Bidwill, deprives the process of the independence and bilateral character necessary for arbitration. *Id.* at 4, 8–10. Second, Plaintiffs argue the agreements are procedurally and substantively unconscionable under Arizona law because they allegedly impose an adhesive employment arrangement and vest one-sided authority

in the Commissioner. *Id.* at 12–14. Plaintiffs offer *McDonough v. Bidwill*, No. CV-24-00764-PHX-DWL, 2025 WL 487171 (D. Ariz. Feb. 13, 2025) as an illustration of the structural conflict: the Commissioner selecting an arbitrator to hear claims against a club owner. *Id.* at 7. Plaintiffs ask the Court to deny the motion to compel arbitration and allow the action to proceed. *Id.* at 15.

In reply, Defendants maintain the agreements provide for valid arbitration under Ninth Circuit and Arizona law. Doc. 7 at 1–2. They distinguish *Flores* and *Gruden* on the ground that those decisions addressed provisions of the NFL Constitution, whereas Plaintiffs signed separate arbitration agreements directly with the Cardinals. *Id.* at 4–5, 8. Defendants emphasize these agreements incorporate procedural rules governing the arbitration and contemplate proceedings before JAMS[1] or a designee of the Commissioner. *Id.* at 5. They further argue, unlike *Flores* and *Gruden*, neither the NFL nor the Commissioner is a defendant here; thus, the Commissioner would not be deciding claims against himself or the organization for which he serves as chief executive. *Id.* at 5, 8–9.

Defendants contend Plaintiffs challenge the arbitration agreements as a whole without specifically challenging the delegation provisions. *Id.* at 6–7. Because those provisions assign questions of validity and enforceability to the arbitrator, Defendants argue Plaintiffs' procedural and substantive unconscionability arguments fail, and the Court must leave Plaintiffs' unconscionability objections for the arbitrator to decide. *Id.* at 7–9. They also rely on *McDonough* and *Neuheisel v. Bidwill*, No. CV-25-01927-PHX-MTL, 2025 WL 2689815 (D. Ariz. Sept. 19, 2025), in which courts in this District enforced materially similar delegation language. *Id.* at 4, 6. Defendants urge the Court to reach the same result here. *Id.* at 5–7.

Alternatively, Defendants contend any unenforceable provision should be severed under the agreements' severability clauses and Arizona law—leaving the remainder of the arbitration agreements enforceable—or assign a neutral arbitrator under 9 U.S.C. § 5. *Id.*

---

[1] JAMS is a private provider of mediation, arbitration, and other alternative dispute resolution (ADR) services worldwide. JAMS, *About Us* (2026), https://www.jamsadr.com/about.

at 9–10. Defendants renew their request for the Court to compel arbitration and stay the action. *Id.*

## IV. ANALYSIS

### A. Challenges to the Delegation Provisions

#### 1. Applicable Law

Questions concerning the validity, enforceability, or scope of an arbitration agreement ordinarily are for the courts to decide. *Caremark LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022); *Momot*, 652 F.3d at 987–88. The parties may assign those questions to an arbitrator through a clear and unmistakable delegation provision. *Id.* A delegation provision is a separate agreement to arbitrate gateway questions and must be evaluated separately from the agreement to arbitrate the underlying claims. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69–72 (2010) (explaining that a delegation provision is an "additional, antecedent agreement" severable from the remainder of the arbitration agreement).

A challenge to the arbitration agreement as a whole does not permit a court to disregard an otherwise enforceable delegation provision; but when a party specifically challenges the delegation provision, the court must consider that challenge before ordering compliance with it. *Id.* at 71–72; *Brennan v. Opus Bank*, 796 F.3d 1125, 1132–33 (9th Cir. 2015). The Ninth Circuit imposes a "relatively low barrier to entry" for that challenge. *Bielski*, 87 F.4th at 1010. The opposing party must at least mention the delegation provision and explain why it is unenforceable. The same grounds may support challenges to both delegation and the broader arbitration agreement, provided the party explains how those grounds affect each agreement. *Id.* at 1009–11. The Court may consider other provisions of the agreement insofar as they bear on the enforceability of delegation. *Id.* at 1011–12.

///

///

///

///

**2. Application to Plaintiffs' Delegation Challenge**

**a. The agreements clearly and unmistakably delegate validity and enforceability questions.**

Plaintiffs do not dispute they signed the agreements. Their objections concern the legal effect and enforceability of the dispute-resolution terms. Doc. 6 at 4–12. Those terms cover "any dispute, controversy or claim," including any claim that "all or any part" of the agreement "is void or voidable," and provide such disputes shall be referred to the Commissioner or his designee for binding arbitration. Doc. 5 at 13, 25–26. By assigning challenges to whether the agreements are void or voidable, the agreements clearly and unmistakably delegate questions concerning their validity and enforceability. *See Momot*, 652 F.3d at 987–88.

**b. The Court concludes Plaintiffs separately challenged delegation, but the challenge fails on the merits.**

Defendants contend Plaintiffs challenged only the arbitration agreements as a whole. Doc. 7 at 6–7. Although Plaintiffs did not clearly separate their delegation challenge from their broader challenge to the agreements, their opposition identifies the "delegation language," calls the "purported delegation" unenforceable, and argues that the Commissioner cannot fairly determine the validity of the dispute-resolution arrangement that grants him authority. Doc. 6 at 5, 10–14. Given *Bielski*'s "relatively low barrier," the Court concludes Plaintiffs sufficiently challenged the delegation provisions and considers the challenge on the merits. 87 F.4th at 1010.

Plaintiffs invoke the same alleged institutional conflict to also challenge the Commissioner's authority to classify disputes and select the arbitral forum. Doc. 6 at 9–10. The Court addresses that distinct challenge separately below.

///

///

///

///

### B. Unconscionability of the Delegation Provisions

#### 1. Applicable Law

Section 2 of the FAA makes written arbitration agreements enforceable except on generally applicable legal or equitable grounds for revoking a contract. Because a delegation provision is itself an agreement to arbitrate threshold questions, the same rule applies. *See Rent-A-Ctr.*, 561 U.S. at 70–71. State contract law determines whether a delegation provision is unconscionable, provided the applicable principles govern contracts generally and do not disfavor arbitration. *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–58 (2003) (explaining that the FAA reaches transactions affecting interstate commerce, even when the individual transaction is otherwise intrastate); *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 921–22 (9th Cir. 2013); *Hamblen v. Hatch*, 398 P.3d 99, 104 (Ariz. 2017) ("[T]he FAA applies to arbitration agreements in employment contracts."). Both agreements select Arizona law, and the parties agree that Arizona law governs their unconscionability dispute. Docs. 5 at 15, 29; 6 at 12.[2]

Arizona recognizes procedural and substantive unconscionability. A showing of substantive unconscionability alone may render a contractual provision unenforceable. *Maxwell v. Fidelity Fin. Servs., Inc.*, 907 P.2d 51, 59 (Ariz. 1995) ("[U]nder A.R.S. § 47–2302, a claim of unconscionability can be established with a showing of substantive unconscionability alone…."). The party asserting unconscionability bears the burden of proving that defense. *Gullett ex rel. Est. of Gullett v. Kindred Nursing Ctrs. West, L.L.C.*, 390 P.3d 378, 387 (Ariz. Ct. App. 2017).

Procedural unconscionability concerns the fairness of the bargaining process,

[2] Defendants cite Arizona's arbitration statutes to describe arbitration. Doc. 7 at 3–4. Neither Arizona's Uniform Arbitration Act nor its Revised Uniform Arbitration Act applies to these employer–employee arbitration agreements. A.R.S. §§ 12-1517, 12-3003(B)(1) ("[T]his chapter shall not apply to an agreement to arbitrate any existing or subsequent controversy...[b]etween an employer and employee."). However, this statutory exclusion does not displace Arizona's generally applicable contract defenses under the FAA. *Rizzio v. Surpass Senior Living LLC*, 492 P.3d 1031, 1035 (Ariz. 2021) ("As noted by the Supreme Court, '[g]enerally applicable contract defenses, such as…unconscionability, may be applied to invalidate arbitration agreements without contravening § 2' of the FAA." (quoting *Dr.'s Assocs., Inc.*, 517 U.S. at 687)).

including unfair surprise, concealment, and the opportunity to understand the agreement. *Maxwell*, 907 P.2d at 57–58. An adhesive or nonnegotiable contract is not, for that reason alone, unconscionable. *Rizzio v. Surpass Senior Living LLC*, 459 P.3d 1201, 1206 (Ct. App. 2020), *aff'd in part, vacated in part on other grounds*, 492 P.3d 1031 (2021).

Substantive unconscionability concerns whether the terms themselves are so one-sided as to oppress or unfairly surprise a party or create an overall imbalance in the parties' rights and obligations. *Maxwell*, 907 P.2d at 58. A contractually prescribed partial forum may be substantively unconscionable. *Gullett*, 390 P.3d at 384–85; *Falcone Bros. & Assocs., Inc. v. City of Tucson*, 381 P.3d 276, 283–84 (Ariz. Ct. App. 2016).

**2. Application to the "Commissioner-Arbitrator Scheme"**

**a. Procedural Unconscionability**

The Court assumes the arbitration provisions were adhesive and Plaintiffs could not negotiate them out of their employment agreements. It appears the NFL Constitution requires that club employment contracts incorporate the Constitution and Bylaws, which give the Commissioner authority over employment disputes. NFL Const. & Bylaws arts. III, § 3.11(D) ("[Each member club] shall include in every contract between any member club and its employees, including coaches and players, a clause wherein the parties to such contract agree to be bound by the Constitution and Bylaws of the League."), VIII, § 8.3(B) ("The Commissioner shall have full, complete, and final jurisdiction and authority to arbitrate…[a]ny dispute between any player, coach, and/or other employee of any member of the League…and any member club or clubs…."); *see also Nat'l Football League v. Gruden*, 573 P.3d 1240, 1242–43 (Nev. 2025).

Beyond the asserted lack of negotiation, Plaintiffs offer no evidence about the contracting process. The record does not show Plaintiffs lacked an opportunity to read the agreement, the arbitration terms were concealed, or Defendants prevented either Plaintiff from understanding them. Adhesion and unequal bargaining power, without more, do not establish procedural unconscionability. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) ("Mere inequality in bargaining power…is not a sufficient reason to hold

that arbitration agreements are never enforceable in the employment context."); *Rizzio*, 459 P.3d at 1206. Plaintiffs have not carried their burden on this issue.

**b. Substantive Unconscionability**

The agreements assign the Commissioner or his designee authority to decide any claim that all or part of the agreements is "void or voidable." Doc. 5 at 13, 25–26. Plaintiffs contend that this delegation is unconscionable because the Commissioner is connected to the NFL and its member clubs.

The question is close. The Commissioner would be deciding the enforceability of NFL-required provisions that confer authority on him. But the relevant question is whether that arrangement is so one-sided that the contractual terms themselves create an *inherently* partial forum. *See Maxwell*, 907 P.2d at 58–60; *Gullett*, 390 P.3d at 384–85. Plaintiffs have not made that showing.

Neither the NFL nor the Commissioner is a defendant, and the dispute concerns the alleged conduct of one member club and its officials. The Commissioner did not participate in the challenged conduct, and his league-wide responsibilities do not establish that he is "beholden" to the Cardinals or Bidwill. Doc. 6 at 10. This arrangement differs from the impermissibly one-sided scheme in *Falcone*, where the city was a party, and the city's procurement director selected the hearing officer without apparent constraint and retained authority to reject or modify the hearing officer's recommendation or otherwise dispose of the dispute. 381 P.3d at 283.

*Flores* and *Gruden* are likewise distinguishable. In *Flores*, the plaintiff alleged NFL-wide discrimination, named the NFL as a defendant, and was required to submit those claims to the Commissioner—the "principal executive officer" of an adverse party. 150 F.4th at 183–88. In *Gruden*, both the NFL and Commissioner were defendants, and the Commissioner was accused of participating in the conduct underlying the claims he could be called upon to adjudicate. 573 P.3d at 1240. *Gruden* applied California law to an NFL Constitution provision that the NFL could amend without notice and that would have no operative effect if the Commissioner's arbitral authority were severed. 573 P.3d at 1240–

42. Here, the record identifies no comparable power to amend the parties' employment agreements, which contain express severability clauses and independent promises to arbitrate. Under Arizona law, an unenforceable term may be severed if the remaining agreement can stand on its own. *Olliver/Pilcher Ins., Inc. v. Daniels*, 715 P.2d 1218, 1221 (Ariz. 1986); *see* Doc. 5 at 14–15, 26–27.

The record provides no additional basis to find the delegated forum inherently partial. The only similar proceeding identified by Plaintiffs as evidence of an unfair process—*McDonough*—resulted in a $3 million arbitration award for the employee. 2025 WL 487171, at *1. Thus, the one case Plaintiffs cite suggests the arbitration process at issue was unbiased in that case, and it weighs against Plaintiffs' contention that the agreed process necessarily prevents employees from obtaining material relief. *See Gullett*, 390 P.3d at 385 (declining to find an arbitrator-selection process unconscionable based on speculation that the defendant might select arbitration companies employing arbitrators it trusted when the record contained no evidence that it had done so before).

Therefore, Plaintiffs have not shown that the delegation provisions are substantively unconscionable. Because the agreements are valid contracts and clearly assign gateway questions to the Commissioner or his designee, the Court will enforce the delegation provisions as written.

**C. The arbitration agreements are enforceable.**

Before compelling arbitration, the Court must determine whether the parties formed arbitration agreements and whether the FAA supplies authority to enforce them. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148–49 (2024) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so. Before referring a dispute to an arbitrator…the court determines whether a valid arbitration agreement exists." (cleaned up)); *New Prime Inc. v. Oliveira*, 586 U.S. 105, 111 (2019) (holding that, before compelling arbitration under FAA §§ 3 and 4, a court must determine whether the agreement falls within §§ 1 and 2); *In re Orr*, 178 F.4th 525, 537–38 (9th Cir. 2026) ("By improperly failing to decide whether the FAA or state [arbitration]

law provides its authority to compel arbitration, the district court delegated that question to the arbitrator. That improper delegation both distorts the judiciary's role in determining the law applicable to the case and prejudices [the plaintiff], who should not be subject to arbitration premised on erroneous delegation of judicial authority."). Because the delegation provisions are enforceable, the Commissioner or his designee must decide Plaintiffs' challenges to the enforceability of the agreements' classification, referral, and merits-arbitrator-selection provisions. *See Rent-A-Ctr.*, 561 U.S. at 68–72. Even if the Court were required to resolve those remaining challenges itself, however, the agreements would be enforceable and cover the claims presented here.

**1. The arbitration agreements are enforceable on this record.**

As analyzed previously, the FAA governs the parties' agreements. The written employment agreements evidence transactions involving interstate commerce because they govern employment with an NFL member club participating in a national professional-sports enterprise. *See* 9 U.S.C. § 2; *Citizens Bank*, 539 U.S. at 56–58. Hogue worked as an executive assistant and Shumpert as a football coach; neither belongs to a class of transportation workers exempted by 9 U.S.C. § 1. *See New Prime*, 586 U.S. at 111 (holding that a court must determine whether § 1's transportation-worker exclusion applies before compelling arbitration under the FAA). Neither Arizona's Uniform Arbitration Act nor its Revised Uniform Arbitration Act applies to employer–employee arbitration agreements. *See* A.R.S. §§ 12-1517, 12-3003(B)(1) ("[T]his chapter shall not apply to an agreement to arbitrate any existing or subsequent controversy...[b]etween an employer and employee."). Accordingly, the FAA supplies the Court's statutory authority to compel arbitration.

Defendants produced written arbitration agreements signed by both Plaintiffs. Hogue signed her Employee Certificate "[i]n consideration of [her] employment" with the Cardinals, and Shumpert signed an employment agreement supported by the parties' mutual promises. Doc. 5 at 13–15, 17, 25–29. Plaintiffs do not dispute their signatures or otherwise challenge mutual assent or consideration.

Plaintiffs have not shown that the provisions governing classification, referral, and

selection of the merits arbitrator are unconscionable as applied to this dispute. The Court assumes those provisions were nonnegotiable. But the agreements identify the Commissioner or his designee and describe the process for resolving covered claims. Doc. 5 at 13–15, 25–27. Their standardized, nonnegotiable character does not render them unconscionable. *See Rizzio*, 459 P.3d at 1206.

The Commissioner's institutional responsibilities generally extend to the NFL, and he has an interest in the integrity of the NFL as a whole. His relationship with the member clubs does not establish that he is "beholden" to the Cardinals or Bidwill in a manner that prevents fair administration of this dispute. Doc. 6 at 10. The record does not show that the Commissioner participated in any employment decision or statement challenged here. His contractual role in this dispute concerns claims against one member club and its officials; neither he nor the NFL is a defendant or accused of the underlying misconduct.

The agreements' classification framework further addresses Plaintiffs' concern. They define a non-football-oriented dispute as one that does not relate to or arise from the NFL Constitution and Bylaws or NFL or employer policies, rules, or regulations. Most notably, they expressly identify discrimination, wage-and-hour, and family-and-medical-leave disputes as examples. Doc. 5 at 14, 26. Plaintiffs' claims concern alleged workplace discrimination, compensation, working conditions, termination, and related statements. On their face, those claims fit plainly within the agreements' description of non-football-oriented disputes. At oral argument, Defendants' counsel agreed that Plaintiffs' claims were "obvious[ly]" non-football-oriented under the agreements and stated that he expected the Commissioner to refer them to JAMS, although the agreements leave classification and referral to the Commissioner's discretion. Doc. 13 at 12:12–19; Doc. 5 at 14, 26.

Both potential paths provide procedural protections. If the Commissioner or his designee serves as the merits arbitrator, the NFL Dispute Resolution Procedural Guidelines (the "Guidelines") require a proceeding designed to reach a fair and prompt outcome, generally prohibit ex parte communications concerning material facts, and require application of the substantive law and burdens of proof that a court would apply unless the

parties agree otherwise. Doc. 5 at 31–32 §§ 3.1, 3.4, 4.2. The Guidelines also require a written decision explaining its factual and legal basis and authorize the relief available in court. *Id.* at 34 § 13.1. If the Commissioner refers the dispute to JAMS, the JAMS Employment Arbitration Rules govern. *Id.* at 14, 26. Plaintiffs have not shown that either process forecloses a statutory remedy or that the applicable procedures will be disregarded in this dispute.

Courts should not presume that arbitrators will be biased. *Gilmer*, 500 U.S. at 30. In *Hojnowski v. Buffalo Bills, Inc.*, the court rejected the argument that the Commissioner's selection by the NFL's member clubs, including the defendant, rendered him incapable of fairly arbitrating an employee's claims. 995 F. Supp. 2d 232, 239 (W.D.N.Y. 2014). Although *Hojnowski* applied New York law and predates *Flores*, its treatment of the claimed institutional bias is persuasive here. *See Flores*, 150 F.4th at 172.

Arizona law nevertheless recognizes that actual bias need not be separately proved when the contractual selection process itself creates a partial forum. *Gullett*, 390 P.3d at 384–85 (explaining that a fundamentally unfair selection process requires no separate proof of actual bias, but upholding a process that required an independent, impartial entity and allowed both parties to participate in selecting the arbitrator). Plaintiffs have not shown such inherent partiality here. The Commissioner's role under these agreements does not resemble a litigant's reservation of adjudicatory authority to its own managers, as in *Falcone*. 381 P.3d at 283. Nor have Plaintiffs identified evidence that the Commissioner has administered a comparable dispute unfairly. Speculation that the Commissioner will favor Defendants is insufficient to invalidate the remaining provisions on this record.

Finally, the agreements' references to a final, binding, and unappealable decision do not eliminate judicial review for evident partiality or the other grounds specified in 9 U.S.C. § 10(a). *See In re Wal-Mart Wage & Hour Emp. Prac. Litig.*, 737 F.3d 1262, 1266–68 (9th Cir. 2013) (holding that the statutory grounds for vacatur under § 10(a) cannot be eliminated by contract). Plaintiffs may seek vacatur if the resulting award presents a ground specified in § 10(a). Thus, the remaining arbitration provisions are enforceable on this

record.[3]

**2. The agreements cover all claims and Defendants in this action.**

The agreements cover this dispute. Both apply to "any dispute, controversy or claim" arising from Plaintiffs' employment or termination, including contract, tort, and § 1981 claims. *Id.* at 13, 25–26. They also extend to claims against the Cardinals' officers, directors, agents, and employees. *Id.* Plaintiffs' claims arise from their duties, compensation, working conditions, termination, and Defendants' alleged statements concerning Shumpert's departure. Doc. 1-3 at 9–15. Bidwill and Walls are sued for conduct allegedly undertaken in their roles as the Cardinals' President and Chief Operating Officer. *Id*. The agreements cover all claims and Defendants in this action.

---

[3] Plaintiffs' challenge to the Commissioner-controlled provisions presents a substantial question. Even if those provisions were unconscionable, however, the Court would sever the provisions and enforce the remaining agreement to arbitrate. Arizona law permits enforcement of the lawful remainder when the contractual terms establish an intent to sever unenforceable provisions. *Olliver/Pilcher Insurance, Inc. v. Daniels*, 715 P.2d 1218, 1221 (Ariz. 1986). Here, the agreements provide for severance and preservation of the remaining agreement to submit disputes to binding arbitration. Doc. 5 at 14–15, 27. The challenged provisions concern who administers the process, classifies the claims, and selects or serves as the arbitrator. Removing those provisions would leave intact the parties' agreement to arbitrate employment disputes and the provisions identifying the covered claims and parties. Thus, severance would address the asserted institutional conflict without defeating the agreements' central purpose.

The agreements also contemplate arbitration before JAMS, demonstrating that resolution by the Commissioner or his designee is not indispensable to the parties' broader commitment to arbitrate. Doc. 5 at 14, 26. Although that referral remains discretionary under the agreements as written, the contemplated alternative forum supports the conclusion that the Commissioner's participation is not integral to the agreement to arbitrate these claims. *Cf. Reddam v. KPMG LLP*, 457 F.3d 1054, 1060–61 (9th Cir. 2006) (holding that the unavailability of the contemplated forum did not defeat arbitration where its selection was not integral to the agreement).

If severance left no enforceable method for appointing an arbitrator, § 5 would supply that method by permitting the Court, upon application, to appoint a neutral arbitrator. 9 U.S.C. § 5. Plaintiffs' counsel acknowledged that the Court could appoint a neutral arbitrator—such as through JAMS—if the agreement to arbitrate survived severance, while maintaining that the entire arbitration provision was invalid. Doc. 13 at 29:9–20. For the reasons above, the Court would reject that broader contention and preserve the parties' agreement to resolve their claims through arbitration.

## V. CONCLUSION

The Court concludes that the arbitration agreements, including their delegation provisions, are enforceable under the FAA and cover all claims and Defendants. Arbitration will proceed under the agreed classification, referral, selection, and delegation process. Because Defendants requested a stay, 9 U.S.C. § 3 requires a stay while arbitration proceeds. *See Spizzirri*, 601 U.S. at 476–77.

Accordingly,

**IT IS ORDERED GRANTING** Defendants' Motion to Compel Arbitration (Doc. 5).

**IT IS FURTHER ORDERED COMPELLING** all claims against all Defendants to arbitration under the agreements' terms, including the provisions delegating gateway questions to the Commissioner or his designee and authorizing the Commissioner to classify, refer, and select the arbitrator.

**IT IS FURTHER ORDERED STAYING** this action under 9 U.S.C. § 3 pending completion of arbitration.

**IT IS FINALLY ORDERED** that the parties shall file a joint status report every **120 days**, beginning 120 days from the date of this Order, and shall notify the Court within **10 days** after arbitration concludes.

Dated this 5th day of October, 2026.

John C. Hinderaker
United States District Judge